IN THE MATTER OF THE PETITION OF THE THIRD AVENUE RAILROAD COMPANY FOR A WRIT OF MANDAMUS TO COMPEL THOMAS F. GILROY, COMMISSIONER OF PUBLIC WORKS, TO ISSUE AND DELIVER TO IT A PERMIT TO OPEN STREETS.

*Chapter* 531 *of* 1889, *relating to street railroads, is in conflict with section* 3 *of title* 18 *of the Constitution, which requires the consent of the local authorities — what imposes an additional burden upon the street.*

Chapter 531 of the Laws of 1889, providing that any street surface railway company may operate any portion of its railroad by cable or electricity, or by any power other than locomotive steam power, instead of by animal or horse-power, which should be approved by the State Board of Railroad Commissioners, and be consented to by the owners of one-half in value of the property bounded on that portion of the road, as to which a change of motive power may be proposed, is in conflict with section 3 of article 18 of the Constitution of the State of New York, which provides that no law shall authorize the construction or operation of a street railroad, except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent *also of the local authorities* having the control of, that portion of a street or highway upon which it is proposed to construct or operate such railroad, be first obtained.

The authority to construct and operate a cable road is the conferring of the right to impose additional burdens upon the street, in contravention of the provision of the Constitution.

APPEAL by the Third Avenue Railroad Company, the petitioner, from an order, entered in the office of the clerk of the county of New York on the 11th day of April, 1890, denying the petition of the Third Avenue Railroad Company for a peremptory writ of *mandamus* to be issued and directed to Thomas F. Gilroy, commissioner of public works, commanding and directing him to issue and deliver to the said Third Avenue Railroad Company a permit to open the streets along its Third avenue route for the purpose of changing its motive power to cable traction under the terms of the permission granted by the State Board of Railroad Commissioners.

*George Hoadley, John E. Parsons* and *E. Lauterbach*, for the petitioner, appellant.

*D. J. Dean*, for the commissioner, respondent.

VAN BRUNT, P. J.:

The petitioner is engaged in operating a street surface railroad in the city of New York, using animal power for the purpose of draw-

ing its cars. By resolution of the common council, adopted in 1852, granting the privilege of operating a street railroad by any power other than steam power, confirmed by act of the legislature in 1854, the petitioner acquired the franchise which it has hitherto enjoyed.

The conditions of that franchise conferred upon the petitioner the power to disturb the public streets as much as was necessary in order to lay its rails and tracks, leaving the surface of the street unbroken. The only disturbance of the street which was allowed by the charter was the temporary excavation required for embedding the ties and stringers which supported the tracks and rails, and when they were put in place the surface of the street was to be left unbroken, passage-way even and superstructure solid.

The petitioner being desirous of constructing a cable road instead of a railway operated by horse power, in the year 18:7 applied for a *mandamus* directing the commissioner of public works to grant to the petitioner a permit to make the necessary excavations in the street for the purpose of laying cables between the present rails as motive power for its cars. This application having been denied, and such denial affirmed by the Court of Appeals upon the ground that the petitioner had acquired neither by the charter, nor the resolution nor the act, the right to open, excavate or use below the existing surface of the streets, save for the temporary purpose of laying its track and for necessary repairs thereto, in 1889, by chapter 531 of the Laws of that year it was provided that " any street surface railway company may in any case operate any portion of its railroad by cable or electricity, or by any power other than locomotive steam power, instead of by animal or horse-power, which may be approved by the State Board of Railroad Commissioners, and consented to by the owners of one-half, in value, of the property bounded on that portion of the railroad as to which a change of motive power is proposed." *  *  * And it was further provided that " it shall be lawful for any such railroad company to make any changes in the construction of its road or road-bed at any time rendered necessary by a change in its motive power."

The railroad commissioners and a majority of the property owners having approved of such change, the petitioners now renew their application to compel the commissioner of public works to grant them the necessary permit to build their cable road.

It is claimed, upon the part of the commissioner of public works, that chapter 531 of the Laws of 1889 is in conflict with section 18 of article 3 of the Constitution of the State of New York. Section 18 provides that " the legislature shall not pass a private or local bill in any of the following cases," and after enumerating several classes of cases it proceeds : " Granting to any corporation, association or individual the right to lay down railroad tracks." It provides that the legislature shall pass general laws providing for the cases named in the section, and for all other cases which, in its judgment, might be provided for by general laws. " But no law shall authorize the construction or operation of a street railroad except upon the condition that the consent of the owners of one-half in value of the property bounded on, and the consent also of the local authorities having the control of that portion of a street or highway upon which it is proposed to construct or operate such railroad, be first obtained."

The question presented in the case is whether this claim of the commissioner of public works is well founded. It is to be observed that, by the provisions of the Constitution, the prohibition of the granting of franchises to private corporations for the purpose of building street railways, which power had been greatly abused prior to the adoption of this amendment to the Constitution, was intended to protect two interests which were necessarily affected by such grants, namely, that of the abutting owners upon the street in which the road was to be operated, and, secondly, the city itself, whose duty it was to see that the street was kept in condition for the use and passage of the general public. It therefore provided that the legislative power to make such grants should depend upon the consent of the property owners and the consent of the city authorities. In the case at bar the consent of the property owners had been obtained to the construction of this cable road, but the consent of the city authorities has not been secured, and the question presented is whether, under the act of 1889 referred to, the consent of the city authorities can be dispensed with.

In view of the decision of the Court of Appeals upon the previous application of the petitioner for a *mandamus* (*People ex rel. Third Ave. R. R. Co.* v. *Newton*, 112 N. Y., 401), we think that but one answer can be given to this question. It is claimed, upon

the part of the petitioner, that it did not seek to construct or operate a new road, but simply to change the motive power in the operation of a road which it had already the right to maintain and operate. It was held, however, in the previous case, that the proposed construction or change of the present street railroad to a cable road was the building of an absolutely new road, subjecting the streets of the city to new burdens which, under its original franchise, the petitioner had no right to impose.

It was further held that the previous application made in order to carry forward its scheme, as disclosed by the papers in that case, was for a permit to make immediate excavations in and at frequent intervals of space across the public streets of the city throughout its entire route, and that no license or word of permission to do so could be found in its charter; that the road was completed, and, as the learned justice said who delivered the opinion in that case : "The relator had, then, no right to again disturb the surface of the streets, except for necessary repairs and replacing of its ties and rails, as occasion might require, for the proper maintenance of its road. That power it had; no more. It now, however, asserts a legal right to make excavations, not for any of the purposes of its track or road-way, or the foundation of either, but for the purpose of laying a cable in each track between the present rails, as motive power for its cars, by the agency of steam from stationary engines. A mere statement of the proposition should be a sufficient answer to the claim. To open a city street for the construction of a surface railroad track, or its reparation, and to open that street for the introduction of a power to operate the road, would seem to be separate and distinct things. In the first, the excavation ends with the construction, the material of the street is replaced, or, in lieu of it, some other substance which restores the surface to its original, unbroken condition and usefulness, and leaves all below the surface to such uses as the municipality may require.

In the other case, as the record discloses, the cable requires a conduit of mason work, the necessary excavation for which, on a straight road without curves, is six feet wide and from four to five feet deep. Where there is a double track there must be two of these trenches, and at intervals of thirty-five feet along the whole distance they must go still deeper for drainage; and where there

are curves the width of the excavation must be at least from twelve to fifteen feet. At a corner the pit will be thirty feet in width, and at the engine-houses, whence the cable extends to the conduit in the street, it will be necessary to excavate the entire street from the engine-room out to and beyond the track furthest from it. None of these things are required for the construction of a street-surface railroad, none of them affect even its operation. They relate to some act or thing to be done below the surface."

It was, therefore, held that the petitioner had exhausted its power under its charter; that there could be found within its charter nothing which authorized it to impose the additional burdens upon the street which was sought to be done by a change from the ordinary street surface railroad to a cable road; and that, therefore, the commissioner of public works was justified in refusing a permit to the petitioner to construct this new railway and subject the streets to the additional burden sought to be imposed upon them. This being the condition of the law, it seems to be difficult to understand how it can be claimed that the granting of the authority for the building of this new road is not in contravention of the article of the Constitution which has been quoted, which says that no law shall authorize the construction or operation of a street railroad except upon the conditions therein stated. Bearing in mind, as already stated, that one of the objects of requiring the consent of the city authorities was to prevent the public streets from being burdened by these franchises to the detriment of the public use, how can it be claimed that a road already in existence, having the right to do one thing, the legislature have the power to grant it the right to do anything and everything else along its original route. It is the granting of authority to construct and operate a new road which the petitioner has not the slightest authority either to construct or operate under its present charter. We are unable to see, in view of the exposition of the law which was given upon the previous appeal, to which attention has been called, that there can be any question but what the Constitution prohibits the imposing of additional servitudes upon the streets without the consent of the local authorities; and that there cannot be any question but that this authority to construct and operate this cable road is the conferring of the right to impose such additional burdens upon the streets in contravention of the

provisions of the Constitution. The right to operate a street surface railroad is one thing; the right to operate a cable road is another. And as the Court of Appeals have decided that the powers of the petitioner to construct a street railroad have been exhausted, it is difficult to see how another and different right — a new and independent right — can be conferred in view of the prohibition of the Constitution. There is no provision authorizing the conferring of additional powers upon an old corporation which the legislature may not confer upon a new.

The prohibition is general — "But no law shall authorize the construction or operation of a street railroad," etc. The attempt to authorize the construction of a cable road in the place of a street railroad, which is already in existence, created under a charter which gave the petitioner no right to build a cable road, was clearly the conferring of an additional power, an additional franchise in violation of the prohibition of the Constitution.

It is urged upon the part of the petitioner that it having the right to construct a street railroad, no additional authority is conferred, that the cable road is a street railroad, and that it will simply operate a street surface road the same as before. But the difficulty is that the petitioner has no right, under its present charter, either to construct or operate a cable road. The construction and operation of a cable road places additional burdens upon the public streets, and the Constitution has said that such burdens shall not be imposed except with the consent of the city authorities, and it does not seem that there can be any difference between the conferring of such authority upon an old corporation and the conferring of such authority upon a new.

We think, therefore, that the act of 1889 attempts to authorize the construction and operation of a street railroad under circumstances expressly prohibited by the Constitution.

The order appealed from should be affirmed, with costs.

Brady and Daniels, JJ., concurred.

Order affirmed, with costs.